UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | | |
|---|---|---|
| CARL HALE, individually and as Guardian of the Person and Estate of Amy L. Hale as Guardian for Amy L. Hale, | : : : : | |
| Plaintiff, | : : | |
| v. | : : | File No. 1:08-cv-82-jgm |
| NORTHEASTERN VERMONT REGIONAL HOSPITAL, INC. and PAUL M. NEWTON, | : : : | |
| Defendants. | : : | |

MEMORANDUM AND ORDER
(Docs. 60, 62, 65)

I.   Introduction

    Plaintiff Carl Hale, as guardian of Amy L. Hale (Ms. Hale), commenced this medical malpractice action on April 10, 2008, and filed an Amended Complaint (Doc. 13) on August 13, 2008, against Defendants Northeastern Vermont Regional Hospital, Inc. and Paul M. Newton, M.D. (collectively, Defendants).  Plaintiff alleges Defendants were negligent, and Northeastern Vermont Regional Hospital, Inc. (NVRH) violated the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd, in treating Amy Hale at the emergency department of NVRH in May 2006.  Defendants move for summary judgment on the negligence claim (Docs. 60, 62) and NVRH moves for partial summary judgment on the EMTALA claim (Doc. 65).  Plaintiff opposes the motions.  (Doc. 77.)

    For the reasons set forth below, Defendants' motion for summary judgment as to negligence is denied and NVRH's motion for summary judgment as to EMTALA is granted in part and denied in part.

II.     Background[1]

On May 18, 2006, Ms. Hale, a thirty-five year old woman, was seen by Dr. Newton in the Emergency Department (ED) of NVRH.  She complained of pain in her neck and pain radiating into her temples and back.  After an examination and review of medical records, Dr. Newton diagnosed her with torticollis, a stiff neck associated with muscle spasm, prescribed a pain medication and muscle relaxant, and discharged her with instructions to see her own physician or return to the ED if she did not improve.  According to the NVRH clinical report, Ms. Hale was received at 9:12 a.m. and discharged at 9:46 a.m.  (Doc. 61-1 at 3.)

On May 21, 2006, Ms. Hale returned to the ER complaining of a worse headache and neck, back and joint pain.  She was again seen by Dr. Newton, who ordered a lumbar puncture and CT scan.  The results of the tests were suspicious for an intracranial bleed.  Ms. Hale was transferred to Dartmouth Hitchcock Medical Center (DHMC), where she underwent further testing and was diagnosed with a brain aneurysm.  On May 23, 2006, DHMC doctors performed surgery, during which the aneurysm ruptured.

The parties disagree as to whether Ms. Hale was 100% neurologically intact prior to the surgery.  Compare Doc. 61 ¶ 10 with Doc. 77-1 ¶ 10.  As a result of the rupture, however, Ms. Hale suffered neurological injuries with devastating and permanent effects.  Plaintiff alleges the misdiagnosis on May 18 delayed Ms. Hale's treatment and caused the irreversible brain damage.  (Doc. 77 at 2.)  Defendants assert that because rupture of an aneurysm is a known risk of the coiling procedure performed on Ms. Hale, it could have happened whether the aneurysm was diagnosed on May 18 or May 21.  The parties agree Ms. Hale's permanent neurological injuries would have been

---

[1] The facts are undisputed except where otherwise noted.

avoided if the coiling procedure had been successfully performed without the intraprocedural rupture.

III.  Discussion

    A.  Standard

Summary judgment is appropriate only where the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.  The Court must resolve ambiguities and draw inferences in favor of the non-moving party.  Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) (internal citation omitted).  To overcome such a motion, the non-moving party must offer sufficient proof to allow a reasonable factfinder to decide in its favor.

The court's function is not to resolve disputed issues of fact but only to determine whether there is a genuine issue of material fact to be tried.  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).  "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Fischl v. Armitage, 128 F.3d 50, 56 (2d Cir. 1997) (internal quotation and citation omitted).  Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.  See, e.g., Fed. R. Civ. P. 56(e) 1963 Advisory Committee Note; Anderson, 477 U.S. at 255.

B.    Negligence Claim

Under Vermont law,[2] to prevail on a claim of professional negligence, a plaintiff must establish the following elements by a preponderance of the evidence: (1) the defendant owes a legal duty to conform to a certain standard of care so as to protect the plaintiff from an unreasonable risk of harm; (2) the defendant committed a breach of this duty by failing to conform to the standard of care; (3) the defendant's conduct was the proximate cause of the plaintiff's injury; and (4) the plaintiff suffered actual loss or damage. Wilkins v. Lamoille County Mental Health Servs., Inc., 889 A.2d 245, 252-53 (Vt. 2005).

Defendants argue Plaintiff cannot establish the requisite causal connection between Defendants' alleged negligent conduct and Ms. Hale's injuries. (Doc. 60 at 1.) "Liability for negligence [] requires not only a breach of a duty of care but also evidence that defendant's unreasonable conduct caused the plaintiff's harm. Specifically, causation requires both 'but-for' and proximate causation. Thus, the plaintiff must first show that the harm would not have occurred 'but for' the defendant's conduct such that the 'tortious conduct was a necessary condition for the occurrence of the plaintiff's harm.'"[3] Collins v. Thomas, 938 A.2d 1208, 1211 (Vt. 2007) (internal citations omitted). Ordinarily, the causation element, as well as standard of care, of a professional negligence claim must be proved by expert testimony. Wilkins, 889 A.2d at 252-53.

Plaintiff's expert, Dr. Ram Chavali, opined in his expert report "lack of consideration of the diagnosis on her initial emergency room visit on 5/18/06 ultimately played a substantial role in her

---

[2] Because jurisdiction is based on diversity, the Court applies the law of the forum state to Defendants' summary judgment motion for lack of causation. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

[3] To put it another way, if an injury would have happened without the negligent act, then the act is not a cause of the injury.

untoward outcome," (Chavali Expert Report at 2 (Doc. 77-3 at 6)), and "earlier transfer on day one of her ictus would have led to a better outcome and that delay in diagnosis, with time being considered an independent risk factor in itself, substantially impacted in a negative way her outcome," id. at 3 (Doc. 77-3 at 7), and "[s]he would not have deteriorated over the next 3 days and made to be in poorer condition." Id. He also testified at his deposition, when questioned whether the rupture more likely than not would not have occurred if performed on the 18th, responded "I couldn't tell you.  I believe her outcomes more likely than not would have been better," (Chavali Dep. 61:18-62:1, Nov. 23, 2010 (Doc. 77-4 at 5-6)), and "I can say that the chances of rupture are greater." Id. 66:7-11.  To Plaintiff's attorney's follow-up question whether the lack of surgical intervention in the first 24 hours after her presentation to the emergency department on May 18 was a substantial factor leading to the rupture Ms. Hale later experienced, he responded "I believe so." Id. 66:16-21.

     Defendants maintain this testimony is not sufficient to carry Plaintiff's burden to show but-for causation and for that reason, Defendants' motion for summary judgment should be granted on Plaintiff's negligence claim against both Dr. Newton and NVRH.  The issue is complicated by Plaintiff's misplaced reliance on the wrong causation standard.  In addition to being a cause in fact, i.e., but-for cause, of Plaintiff's damages, Defendants' negligence must also be a proximate, or legal, cause which requires determining whether the negligence, if first a cause in fact, was also a substantial factor in producing the injury.  Tufts v. Wyand, 536 A.2d 541, 542 (Vt. 1987) ("A finding of proximate cause depends upon a showing that a negligent act or omission was a cause-in-fact of the alleged injury.") (citation omitted).  The substantial factor test for proximate causation comes

into play when another cause was acting simultaneously to produce the injury.[4] See Wilkins, 889 A.2d at 250. As was the case in Wilkins, "plaintiff's premise-that 'substantial factor' means something less than but-for cause and therefore may support liability in this case-is fundamentally mistaken." Id.

However, the facts, and Dr. Chavali's opinions, must be viewed in the light most favorable to Plaintiff. At the least, a reasonable jury, after hearing Dr. Chavali's testimony, could find the deterioration in Ms. Hale's condition between May 18 and May 21, would not have happened if Dr. Newton had properly diagnosed her on May 18. Further, that Dr. Chavali's opinions speak in terms of possibilities is irrelevant because, viewed in the light most favorable to Plaintiff, it demonstrates a factual dispute. Jugle v. Volkswagen of Am., Inc., 975 F. Supp. 576, 583 (D. Vt. 1997). It is for a jury to determine if Dr. Chavali's testimony regarding Ms. Hale's "outcomes being better" if Dr. Newton had properly diagnosed her on May 18 is sufficient to show that her injuries would not have occurred without Dr. Newton's conduct. Of course the jury must first find Dr. Newton's conduct was unreasonable. Therefore, Plaintiff has successfully raised a fact issue as to causation, and summary judgment is improper on the negligence claim.

    C.    EMTALA Claims

Congress enacted the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd, to prevent hospitals from "dumping" patients in need of emergency care. See Hardy v. N.Y.C. Health & Hosp. Corp., 164 F.3d 789, 792 (2d Cir. 1999) (citations omitted). The Act imposes on Medicare-provider hospitals a duty[5] to afford medical screening and stabilizing

---

[4] The textbook example is two fires, only one of which was caused by defendant, joining together to damage property, and either of which was sufficient to cause the harm, but it is impossible to determine which actually did so.

[5] Generally, there is no common law duty to provide emergency care.

treatment to any patient who seeks care in a hospital emergency room.  See Roberts v. Galen of Va., Inc., 525 U.S. 249, 250 (1999).  EMTALA, however, "is not a substitute for state law on medical malpractice" and "was not intended to guarantee proper diagnosis or to provide a federal remedy for misdiagnosis or medical negligence."  Hardy, 164 F.3d at 792 (internal quotation marks and citations omitted).  Plaintiff alleges a violation of EMTALA but does not specify which section.  (Doc. 13.)  Defendant NVRH asserts Plaintiff has insufficient evidence to establish a claim under either section.  (Doc. 65 at 5.)

        1.        EMTALA Stabilization Claim

EMTALA requires stabilization of any known emergency medical conditions.  Specifically, the statute provides: "If any individual . . . comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either . . . such further medical examination and such treatment as may be required to stabilize the medical condition, or [a transfer to another medical facility, under conditions further specified in subsection 1395dd(c)]."  42 U.S.C. § 1395dd(b).  Courts have construed "determine" to require actual knowledge or diagnosis of the emergency medical condition.  See, e.g., Toretti v. Main Line Hosps., Inc., 580 F.3d 168, 178 (3d Cir. 2009) (noting stabilization claim requires the hospital "actually knew" of the emergency medical condition).  The statute defines an emergency medical condition as:  "[A] medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in--(i) placing the health of the individual . . . in serious jeopardy, (ii) serious impairment to bodily functions, or (iii) serious dysfunction of any bodily organ or part . . . ."  42 U.S.C. § 1395dd(e)(1)(A).

Plaintiff admits Dr. Newton diagnosed torticollis on May 18 and did not suspect an intracranial bleed, arguably an emergency medical condition, until May 21.[6]  See Doc. 77-1 at 1.  Torticollis is spasms of the neck muscles or a pulled muscle in the neck.  (Doc. 65-4 ¶ 5.)  Plaintiff's assertion that his expert "has opined that [Ms. Hale] was not stabilized prior to discharge as required by EMTALA and that such treatment was an EMTALA violation," (Doc. 77 at 6), is a conclusory legal opinion and is insufficient to raise a material issue of fact.  Plaintiff has not pointed to any evidence that torticollis is an emergency medical condition or that NVRH actually knew Ms. Hale had any emergency medical condition prior to discharge on May 18.  Accordingly, Plaintiff has failed to create a material issue of fact as to the actual knowledge requirement for an EMTALA stabilization claim and NVRH is entitled to summary judgment as to that claim.

    2.    EMTALA Screening Claim

Regarding appropriate screening, EMTALA requires that when a person is presented to a hospital emergency department for examination or treatment, "the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition [] exists."  42 U.S.C. § 1395dd(a).  The term "appropriate medical screening examination" is not defined in the statute.  As noted above, Courts have held the screening requirement does not impose a general federal law against malpractice or negligent diagnosis.  See, e.g., Hardy, 164 F.3d at 792.  What the screening

---

[6] Plaintiff filed a statement of disputed facts (Doc. 77-1) with his "Consolidated Memorandum in Opposition to the Defendants' Motions for Summary Judgment," (Doc. 77) however, that document responds only to Defendants' statements of undisputed material facts in support of the summary judgment motion on the negligence claim.  See Docs. 61, 64.  Plaintiff did not include responses to NVRH's statement of undisputed material facts in support of its motion for partial summary judgment on the EMTALA claims.  Accordingly, the Court may accept NVRH's factual assertions as true.  See D. Vt. L.R. 56.

requirement does impose is a duty to provide uniform screening examinations consistent with a hospital's own policies and based on its capabilities and the medical circumstances and symptoms presented. The requirement is violated if a hospital fails to provide a screening consistent with its own standard screening procedures for the issue presented. See Macamaux v. Day Kimball Hosp., No. 3:09-cv-164, 2011 WL 4352007, at *3 (D. Conn. Sept. 16, 2011) (citing cases).

On the record submitted here, there is a material issue of fact as to whether or not NVRH performed a screening examination that conformed to its standard screening procedures. NVRH is correct that negligent diagnosis alone is insufficient to support a claim for inappropriate screening under EMTALA, see Doc. 65 at 9; however, a "departure from standard screening procedures constitutes inappropriate screening in violation of [EMTALA]." See Gatewood v. Wash. Healthcare Corp., 933 F.2d 1037, 1041 (5th Cir. 1998). On two prior occasions, Ms. Hale went to the NVRH emergency room complaining of headaches. On November 18, 2003, when Ms. Hale presented to the emergency room complaining of a headache, back and neck pain, a lumbar puncture was performed. (Doc. 77-6 at 2.[7]) On January 8, 2004, when she presented complaining of a frontal headache, a lumbar puncture was performed. Id. at 5-6. Without the luxury of evidence of any written policy at NVRH, the Court concludes a jury could reasonably infer that NVRH's standard screening includes performing a lumbar puncture when a patient presents with head pain. When Ms. Hale arrived at the NVRH emergency room on May 18, 2006, complaining of head, neck and back pain, no lumbar puncture was performed.[8] (Doc. 61-1 at 2.) NVRH does not cite any

---

[7] NVRH argues the medical records from Ms. Hale's prior ER visits are inadmissible evidence because they have not been authenticated. (Doc. 80 at 3.) NVRH does not assert the records are not their business records. The Court is confident Plaintiff could provide authentication at trial.

[8] Further, Plaintiff asserts that when Ms. Hale presented to the emergency room in late 2003 and early 2004 -- and the lumbar puncture was performed -- she was covered by insurance, while in

evidence explaining its lumbar puncture policy.  Viewing the facts in the light most favorable to the Plaintiff, there is a material issue of fact as to whether this is a case of misdiagnosis based upon an appropriate screening examination or a case of failure to provide an appropriate screening examination.  Accordingly, summary judgment is not appropriate as to Plaintiff's EMTALA screening claim.

IV.    Bifurcation

In December 2010, Defendants moved to bifurcate any trial on Plaintiff's claims.  (Doc. 48.)  The motion was fully briefed and the Court issued a memorandum and order denying the motion in January 2011.  (Doc. 58.)  Upon reconsideration, however, the Court vacated the order, indicating the motion would be decided after the motions for summary judgment were resolved.  (Doc. 72 (text only Order).)  The Court now requests further briefing on the motion, limited to five pages, to be filed by October 14, 2011.

V.    Conclusion

For the reasons explained above, Defendants Newton and NVRH's motions for summary judgment on the negligence claim (Docs. 60, 62) are DENIED.  Defendant NVRH's motion for partial summary judgment on the EMTALA claim (Doc. 65) is GRANTED in part and DENIED in part.  Additionally, the parties are ordered to submit further briefing on the bifurcation motion (Doc. 48) limited to five pages to be filed by October 14, 2011.

In light of the disposition of the summary judgment motions, and the brevity of the prior ENE held February 9, 2011, see Doc. 70, the Court orders the parties participate in a second ENE session with James Spink, Esq.  It shall be conducted at a date, on or before December 30, 2011,

---

2006, she was not covered by insurance.  See Doc. 83.  This assertion further supports an inference of disparate treatment.

and place to be agreed upon by the parties. The parties shall inform the Court in writing of the chosen date by October 14, 2011.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 30th day of September, 2011.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge